Chase et al. *v.* Torrey.

JONATHAN CHASE, DAVID CHASE AND MARY D. LEONARD *v.* ERASTUS C. TORREY.

IN CHANCERY.

In this case it appeared, that the orators, together with their father, executed a promissory note to the defendant, the orators signing as "sureties," under an agreement, that the note should not be delivered, nor become operative, until certain specified conditions were performed by the defendant ; and that the father, who signed as principal, mortgaged certain premises to secure the payment of the note ; but that the defendant, without the consent of the orators, obtained possession of the note and mortgage, and then refused to perform the conditions ;—and it was held, that the defendant should be enjoined from negotiating the note, or enforcing its collection, as against the orators.

But, it appearing that the father of the orators, who was the principal in the note, had deceased, and his personal representative not being a party to the bill, it was also held, that the court could not, upon this bill, interfere to set aside the note and mortgage, as against his estate.

APPEAL from the court of chancery. The substance of the bill, answer and testimony are sufficiently detailed in the opinion of the court. The court of chancery, September Adjourned Term, 1845, —HEBARD, Chancellor,—decreed, that the defendant should be perpetually enjoined from collecting of the orators, or either of them, the note mentioned in the bill, or negotiating the same, and that it should be no farther valid in law, than to enable the defendant to avail himself of his mortgage security, executed by Jonathan Chase, senior, deceased, and that no costs be taxed for either party. From this decree the defendant appealed.

*J. Barrett* and *A. Tracy* for orators.

*C. Coolidge* for defendant.

The opinion of the court was delivered by

DAVIS, J. The orators by this bill seek to be relieved from a promissory note for $1200, which, on the 12th of June, 1838, they, together with their father, Jonathan Chase, then of Cornish, New

Chase et al. *v.* Torrey.

Hampshire, but since deceased, and as his sureties, executed to the defendant, payable in five years, with annual interest.

The ground on which the application is based, as stated in the bill, is this,—that the defendant, having a debt of about $1200 due to him from Jonathan Chase, senior, and being desirous of obtaining security therefor, proposed to the orators, that they should sign a note with their father for the amount, with a long pay day; which they consented to do, upon the express understanding and condition, that the defendant would cause to be receipted a large amount of personal property, belonging to three other brothers of the orators, viz: James B. Chase, Samuel L. Chase and George F. Chase, who had been doing business together as book printers and binders, under the firm of J. B. & S. L. Chase & Co., which property had been attached at the suit of several different creditors of the firm; so that said property, consisting of unbound bibles and other books, might be put into a proper condition for sale in market, without sacrifice, and then be disposed of, and the proceeds applied in satisfaction of the debts on which the property had been attached. They declare, that the only inducement, which actuated them in entering into such an arrangement, was a wish to aid their brothers and relieve them from embarrassment. It is averred, that Torrey agreed so to do; and it is added, that this was to be done before the note should be delivered. Having executed the note ready for delivery, they proceed to say, that the defendant, without having fulfilled the condition on his part, and without the consent and contrary to the will of orators, possessed himself of the note, and persisted in taking it away, though requested to return it; assuring them, however, at the same time, that he would strictly perform the stipulations on his part. This, they aver, he ever after refused to do, in any manner,—by reason of which the property was sold at sheriff's sale, at a great sacrifice, their brothers became wholly insolvent, and the only purpose they had in view in entering into the arrangement was entirely frustrated.

The defendant, in his answer, unequivocally denies that there was any such condition, on which the execution or delivery of the note was to depend, as is asserted in the bill. He then proceeds to give his version of the transaction, substantially as follows,—that on the 15th of November, 1836, the defendant, at the request of Jona-

than Chase, senior, and upon his written indemnity, signed with his three sons aforesaid, then doing business in Woodstock, a note of $1000 to the Bank of Woodstock, payable in three months,—the father also signing the same note ; that in the spring of 1838, the note to the bank not having been paid, a writ was sued out upon it, returnable at the May Term of the county court, which was served upon the defendant ; that thereupon the defendant caused a suit to be instituted upon the same note in New Hampshire, and the farm of Jonathan Chase, senior, in Cornish, to be attached thereon; that in this state of things he applied to Jonathan Chase, senior, to know what was to be done, and, on learning that he could not then, or soon, pay the bank debt, the defendant proposed to pay it himself, provided he would execute his note for $1200, payable in five years, —some other small claims against him being added to the principal and interest due on the bank note,—in the whole making up the above sum,—procure the signature of the orators thereto, and secure the same by a mortgage on his farm in Cornish. This proposition, he says, was acceded to, and the note and mortgage executed and delivered in pursuance thereof; and afterwards, November 29, 1838, he, the defendant, paid and took up the bank note, and paid the costs in the suit thereupon,—no part of which money, so paid, has ever been refunded to him. This answer being traversed, considerable testimony has been taken and filed in the case on both sides.

Counsel have mainly treated the question as one of fact; and indeed it could hardly be treated otherwise ; for it has not been seriously doubted, that, if the facts be as alleged in the bill, especially in reference to the delivery, or rather want of delivery, of the note, the orators are entitled to have the note cancelled, as to them. They would none the less be entitled to this, because the note on its face carries evidence, that they signed as sureties, merely, for their father, to whom they would have the right to look for indemnity, in the event of their having the note to pay. Such a resource, in the present case, would probably prove altogether illusory, as the principal has deceased, as is understood, insolvent. Were it otherwise, it would not preclude the orators from availing themselves of any bad faith, or non-performance of conditions, which, in ordinary cases, would operate to absolve them from the contract they had entered into.

Chase et al. *v.* Torrey.

On a careful review of the evidence in the case, we can have no hesitation as to the main facts. The depositions of Nathan B. Chase, William P. Chase, George F. Chase, Hannah Chase and Samuel L. Chase, some of whom were present when the note and mortgage were executed, and others of whom speak of the admissions of the defendants, subsequently made, satisfactorily show, that a short time previous to the execution of the papers, and after suits had been commenced on the bank note in Vermont and New Hampshire, and after nearly the whole stock and property of J. B. & S. L. Chase & Co., to the amount of seven or eight thousand dollars, had been attached, the defendant commenced a negotiation with some of the company, and proposed to pay the bank debt, which it appears probable belonged to them, as principals, to pay, and assist in placing the property attached, a large part of which consisted of bibles and other books unfinished and unbound, in such a situation that it might be finished and disposed of without sacrifice, provided he could be properly secured for so doing,—his name then being upon the note, and he having no other security, except the attachment upon the farm in Cornish, which was previously incumbered by a mortgage of $5000 to one Warren, and by an attachment in favor of the Cheshire Bank for an uncertain amount.

The proposition was favorably entertained by the members of the company, and they recommended, that the defendant should confer with those persons in Cornish, who were expected to enter into the arrangement. He did so, and, at the time mentioned, he took Mr. Hopkins, an attorney, with him to draft the necessary papers, and proceeded to the house of Jonathan Chase, senior, where the whole subject was talked over, and where it was distinctly agreed and understood, that the orators would sign the note to the defendant only upon the condition, that he should proceed with the property attached, at Woodstock, in the manner he had proposed,—that after it was signed, it was understood it was not to be delivered, or not to be considered as taking effect, until these conditions were complied with.

The defendant, nevertheless, took the note, as well as the mortgage deed executed by Jonathan Chase, senior, from the table, and carried them away, under the protest and remonstrances of some of the orators, but with assurances on his part, that he would faithfully

Chase et al. *v.* Torrey.

perform all he had agreed to perform; and within a few days thereafter, at different times and places, and to different persons, he admitted the contract to have been as above stated, that he had taken the papers without consent and without right, and that they were to be of no validity without performance on his part,—at the same time avowing an intention not to fulfil the conditions, but to return the papers.

It is true, that Mr. Hopkins, who went and returned with the defendant, testifies, that he was in company with him nearly all the time he was at Cornish, and heard no such conditions mentioned, and nothing of any stipulations on the part of the defendant, other than his agreement to pay the debt to the Bank of Woodstock, and to give up some small claims he held against Jonathan Chase, senior. He adds, that at that time the mortgage deed was not brought away, but was left to be acknowledged, no magistrate being then at hand. By the deed produced, it appears to have been acknowledged on the day of its date, and recorded in the register's office on the next day after.

Perhaps it would be in vain to attempt to reconcile this negative testimony with the positive statements of William P. Chase, George F. Chase, and Hannah Chase, that they were all present at the time mentioned, and heard distinctly the conversation and agreement to the effect above stated; which testimony receives strong confirmation from admissions of the defendant afterwards made, as testified to by Samuel L. Chase and Nathan B. Chase. There can, at all events, be no doubt on which side the preponderance of evidence lies.

It is quite unnecessary to spend time in considering various collateral circumstances, which, on one side or the other, have been pressed upon our attention, as affording confirmation of the direct evidence in the case. In a doubtful question, where the direct evidence was nearly equally balanced, it would be proper and necessary to scrutinize these circumstances carefully, and to weigh probabilities; but in the present case such a process could not possibly change the result, or materially affect in any way the convictions, which have forced themselves upon our minds. So far as the orators are concerned, therefore, they are entitled to the relief they pray for, in respect to their own execution of the note. As against them, it would be inequitable and unjust to enforce it.

They, however, are not content with this, but ask, that the note and accompanying mortgage deed shall be pronounced inoperative and void, as against the estate of Jonathan Chase, This presents a different question altogether. Neither of the orators, so far as appears, is the legal representative of his father's estate, and neither was a party to the mortgage deed. It is not competent for either or all of them to interfere in a controversy between the estate and the defendant. That matter is not presented by this bill, any farther than the interests of the orators are involved by reason of their connection with the note. It is urged, that their interests are concerned as the heirs of Jonathan Chase, senior, and that one of them, Mrs. Leonard, is still farther interested, by reason of an assignment to her from Samuel Paine of the equity of redemption in the farm, which he had bid off at a sheriff's sale, under an execution in favor of the Cheshire Bank, for a small sum, subject to a year's redemption by the debtor. It may be presumed, perhaps, though I do not find any explicit evidence to that effect, that Jonathan Chase did not redeem, by paying the Cheshire Bank; but it will be recollected, that Warren had a previous mortgage of $5000 on the farm, which, it appears, had been assigned to William Jarvis. We are not informed, whether Mrs. Leonard has paid off that incumbrance, or not, or whether the right of doing so is still preserved to her. However this may be, it is a sufficient answer to any claims to a right of interference on that ground, or by virtue of heirship, to say, that these interests are in subordination to the title and interest of the deceased. These last, as already stated, are not and cannot be drawn in question, as between these parties; all the proper parties are not before the court.

I will merely add, that although in the testimony the mortgage deed is frequently coupled with the note, as if both were alike dependent upon the same conditions and stipulations; yet it is apparent from the different situation of the makers of the two instruments, in reference to the responsibilities resting upon them, and the inducements which may be supposed to have influenced them, that there would be occasion for much discrimination in arguments aimed at their validity. The orators owed no debt to the defendant, and were under no obligation to indemnify him on account of his subscription to the note to the Bank of Woodstock. They were liable

Chase et al. *v.* Torrey.

for nothing, which they did not freely and voluntarily assume. The motive, which prompted them to enter into any engagement to the defendant, that is, a wish to extricate their brothers from embarrassment, was natural and laudable, and may well be considered the sole one that influenced them. They would have a right, therefore, to insist on an exact and scrupulous fulfilment of all conditions and stipulations looking to that object. To hold them bound by their contract, when, through the bad faith or other fault of the opposite party, this object was not attained, would contravene the plainest principles of natural justice.

In respect to Jonathan Chase, senior, the matter stood altogether upon a different footing. He had, at the outset, given a written indemnity against the bank debt, which he was bound to make good; he owed the small debts, which were provided for in the arrangement; his property was attached, to compel a performance of the first. By the arrangement proposed, he incurred no additional responsibilities; on the contrary he gained a liberal extension of time, —a consideration usually deemed important by those in failing circumstances. He did not even place any new embarrassments upon such property as he possessed; he merely substituted a mortgage for an attachmant upon his real estate. It is easy to see, from these considerations, that were the question legitimately before us, there would be abundant reasons for discrimination between the principal and his sureties. We are, as the case is presented to us, at any rate, not disposed to give, in behalf of these orators, farther effect to admissions and stipulations looking to a surrender of the note and mortgage, than to make them commensurate with the particular rights and interests of the parties, to whom they were made. More than this these parties have no right to ask; and we see nothing in the whole case, which would require us to go farther, upon the application of any person, who could have been made a party.

We think, therefore, the note should be left in full force as against Jonathan Chase, senior, not only for the purpose of upholding the mortgage, but for every other purpose, except that the defendant should be enjoined from negotiating it in any manner. The chancellor will make the modifications in the decree, necessary to conform it to these suggestions.

As to costs, we allow the orators their costs in this court against the defendant; the rest is left to the proper discretion of the chancellor.